309 P.2d 981

STATE of New Mexico, ex rel. GRINNELL COMPANY, a Colorado Corporation, Grinnell Company, Inc., a Delaware Corporation, Grinnell Corporation, a Delaware Corporation, Petitioners,

v.

The Honorable D. A. MacPHERSON, Jr., Judge of Division Four of The District Court of The Second Judicial District of The State of New Mexico, Respondent.

No. 6174.

Supreme Court of New Mexico.

March 29, 1957.

Rodey, Dickason, Sloan, Mims & Akin, Albuquerque, for petitioners.

Simms, Modrall, Seymour, Sperling & Roehl, Thomas J. Smiley, Albuquerque, for respondent.

SADLER, Justice.

The relators seek by prohibition to restrain the respondent judge from proceeding in a case pending before him in the district court of Bernalillo County, entitled "Larnie Schultz and Hartford Accident and Indemnity Co., plaintiffs, v. Grinnell Company, defendant," and numbered 63,674 on the civil docket of said court. We granted an alternative writ upon the filing and presentation of the petition therefor and the matter is now before us in a test of whether the alternative writ was improvidently issued. It will be necessary to state the facts in order to ascertain this fact.

On January 11, 1954, the plaintiff, Larnie Schultz, was employed as a steam fitter by the Flori Piping Erection Company of St. Louis, Missouri, and was working on the construction of the R. E. A. Electrical Plant at Algodones, New Mexico (also called the Plains Electric Generation and Transmission Co-op, Inc.). On the date mentioned while Schultz was astraddle a steel pipe approximately 16 feet above the floor level, the pipe fell to the ground and he along with it, as a result of which he was injured.

At the time of the fall the workmen's compensation insurer of Schultz' employer was the Hartford Accident and Indemnity Company. Since the date of his injury, the insurer has been paying compensation to Schultz in the amount of $30 per week and furnishing medical benefits. Some two years later, on February 3, 1956, Schultz and the insurer, who will be referred to herein as "Hartford", filed suit against Grinnell Company for Schultz' personal injuries and reimbursement to Hartford for compensation benefits previously paid. The complaint alleges that the fall was caused by a defective or faulty metal hanger "manufactured, fabricated or made" and "warranted" by the defendant, Grinnell Company, "a foreign corporation * * * authorized to do business in the State of New Mexico." This hanger is also referred to in the pleadings as an "I-beam" or "pipe hanger."

The Grinnell Company, the named defendant in cause No. 63,674, is a Colorado corporation with its principal place of business in Denver. It is duly qualified to do business in New Mexico. Service was made on said defendant through its authorized statutory agent, John T. Watson. Purported service was also made on the secretary of state as agent for the Grinnell Company Inc., and for Grinnell Corporation, pursuant to section 21–3–6(b) which section governs service on foreign corporations doing business in New Mexico but not authorized or qualified to do business in this state. This latter service was made on February 16, 1956. The only affidavit filed with the secretary of state upon such service is attached to the petition for the writ as Exhibit "C."

On March 14, 1956, an answer was filed by the defendant admitting that it was authorized to do business in New Mexico, denying that it manufactured or fabricated the alleged defective metal hanger, and setting up the usual affirmative defenses.

On June 18, 1956, certain pleadings were filed below as follows:

(a) Defendants' motion for summary judgment with affidavit attached thereto, the grounds for such motion being that defendant was not a manufacturer but a distributor of products manufactured by the manufacturing corporation and others, that it did not manufacture the metal hanger as alleged in the complaint, nor did it sell the same to plaintiff Schultz' employer at the time of the accident, Flori Piping and Erection Company.

(b) Grinnell Company, Inc.'s motion to quash purported service of process on the secretary of state as its agent with affidavit attached thereto asserting that: (1) the process or summons served upon the secretary of state was directed to "Grinnell Company," a separate corporate entity from Grinnell Company, Inc.; (2) an affidavit by the person to whom process was delivered for service was not filed in the office of the secretary of state as required by section 21–3–6(b), 1953 Comp.; (3) Grinnell Company, Inc., did not do business within the state of New Mexico.

(c) Grinnell Corporation's motion to quash purported service of process on the secretary of state as its agent with affidavit attached thereto on the ground that: (1) the process or summons served upon the secretary of state was directed to "Grinnell Company," a separate corporate entity from Grinnell Corporation; (2) the affidavit by the person to whom process was delivered for service was not filed in the office of the secretary of state as required by section 21–3–6(b), 1953 Comp.; (3) Grinnell Corporation did not do business within the state of New Mexico.

On June 29, 1956, plaintiffs below filed separate interrogatories directed to Grinnell Company, Grinnell Company, Inc., and Grinnell Corporation, respectively. Copies of the interrogatories were attached to the petition herein as exhibits. Thereafter, on August 31, 1956, Grinnell Company, Grinnell Company, Inc., and Grinnell Corporation filed separate answers to certain of the interrogatories referred to above and objected to others, said objections relating primarily to interrogatories involving insurance. Copies of the answers also were attached as exhibits to the petition herein.

On October 4, 1956, the motions to quash referred to above as well as motion for summary judgment by defendant, Grinnell Company, came on for hearing and each, in turn, was denied.

There follow certain allegations in the petition for the writ by the defendant Grinnell Company in which it denies that it

either manufactured or sold the allegedly defective metal hanger; that certain metal hangers were sold to plaintiff's employer, Flori Piping Erection Company, by Grinnell Company, Inc., in St. Louis, Missouri, and shipped from that point by the branch office of Grinnell Company, Inc., to the Flori Piping Company of Algodones, New Mexico, where said metal hangers were in fact delivered to the latter company. That said metal hangers were made and fabricated by Grinnell Corporation.

It is further alleged in the petition for the writ that Grinnell Company, Inc., is a foreign corporation, not authorized or qualified to do business in New Mexico, nor actually so engaged at any material time; that Grinnell Corporation is likewise a foreign corporation, not authorized or qualified to do business in New Mexico, nor actually so engaged at any material time; that Grinnell Company and Grinnell Company, Inc., are wholly owned subsidiaries of Grinnell Corporation and that all three corporations are separate legal entities; that three directors of Grinnell corporation constitute the entire board of directors of Grinnell Company and Grinnell Company, Inc.

It is further alleged in the petition for the writ that the defendant, Grinnell Company, while a foreign corporation, is authorized and qualified to do business in New Mexico. The petition goes on to allege that the books and records of Grinnell Company are kept entirely separate from the books and records of the Grinnell Corporation and that all employees of Grinnell Company are paid solely by it and receive no compensation from Grinnell Corporation.

The respondent admits most of the allegations of the petition but specifically denies that respondent is without jurisdiction over Grinnell Company, Inc. and Grinnell Corporation, alleging, affirmatively, that the three Grinnell corporations are actually and in fact, "one giant operation of one octopus corporation and as such are amenable to process in New Mexico."

A review of testimony taken on interrogatories in depositions to the parties, being officers of the three separate corporations, Grinnell Company, Grinnell Company, Inc., and Grinnell Corporation, along with exhibits attached to depositions, and admissions to be deduced from the pleadings, is sufficient, as we view the matter, to sustain the charge in the answer, or response to the writ, filed on behalf of the respondent, in this prohibition proceeding:

"That the three Grinnell Corporations are actually and, in fact, one giant octopus corporation and as such are amenable to process in New Mexico."

There are so many facets to the widespread operations of the three separate corporations that it would be quite burden-

some to attempt an enumeration of all of them. We shall, however, mention some of the more prominent of those leading us to the conclusion announced.

For instance, we shall appropriate Exhibit 16, attached to the brief of respondent, as entitled and reproduced therein. It follows:

"Exhibit 16

Diagram Graphically Showing the Organization and Relationship

of the

Grinnell Corporations

Grinnell Corporation

| Manufacturer |
| --- |
| Parent |
| Grinnell Corporation |
| A Delaware Corporation |

1. Executive offices: Providence, R. I.
2. Board of Directors same.
3. Secretary: Rodger T. Clapp.
4. Not qualified in N. M.

Grinnell Corporation

| Seller |
| --- |
| Subsidiary |
| Grinnell Company, Inc. |
| A Delaware Corporation |

1. Executive offices: Providence, R. I.
2. Board of Directors same.
3. Secretary: Rodger T. Clapp.
4. Not qualified in N. M.

Grinnell Corporation

| Seller |
| --- |
| Subsidiary |
| Grinnell Company |
| A Colorado Corporation |

1. Executive offices: Providence, R. I.
2. Board of Directors same.
3. Secretary: Rodger T. Clapp.
4. Qualified in New Mexico."

As disclosed by Exhibit 16 attached to the answer brief of respondent, and reproduced next above, the Grinnell Corporation, the parent corporation, maintains its executive offices at Providence, Rhode Island, and so do Grinnell Company and Grinnell Com-

pany, Inc. All three have the same board of directors, the same secretary, share the same executive offices. The only difference noted by the exhibit, supra, lies in the fact that Grinnell Company has been duly qualified to do business in New Mexico, whereas, Grinnell Company, Inc., and Grinnell Corporation have not. The relators' response to an interrogatory No. 3 addressed to Grinnell Company reads, as follows:

"Operation of a warehouse in Denver, Colorado, from which Grinnell manufactured products and products purchased from others (being principally pipe, pipe fittings, hangers, plumbing and heating equipment) are sold within the territory of such company, including the State of New Mexico. Also operates as contractor selling and installing automatic sprinkler systems in its territory."

The same witness, speaking for his employer, Grinnell Company, in interrogatory No. 6, and asked to explain the relationship between it and Grinnell Company, Inc., stated:

"A. Grinnell Company and Grinnell Company, Inc. are both wholly owned subsidiaries of Grinnell Corporation. Both companies purchase Grinnell-manufactured materials from Grinnell Corporation and occasionally purchase Grinnell-manufactured or other materials from each other. The executive officers of Grinnell Company, Grinnell Company, Inc., and Grinnell Corporation are the same. Three of the directors of Grinnell Corporation, namely, James D. Fleming, Clarence H. Rison and Roger T. Clapp, constitute the entire board of directors of Grinnell Company and Grinnell Company, Inc. The books and records of Grinnell Company are entirely separate from the books and records of Grinnell Corporation and all employees of Grinnell Company are paid solely by Grinnell Company and receive no compensation from Grinnell Corporation."

Again, the same witness, speaking now as Secretary of Grinnell Company, Inc., in reply to an interrogatory addressed to that company as to the number of states in which it did business, answered:

"Delaware, Alabama, Arkansas, District of Columbia, Florida, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New Hampshire, New Jersey, Oklahoma, Ohio, Rhode Island, South Carolina, Tennessee, Texas. Qualified in all of the above states. Does business in no other states."

Likewise, the same witness, speaking still as Secertary of Grinnell Company, Inc., gave verbatim the same answer, substan-

tially, as he had to a like inquiry directed to him while speaking as Secretary of Grinnell Company, touching the relationship of the three companies, to-wit:

"Grinnell Company and Grinnell Company, Inc. are both wholly owned subsidiaries of Grinnell Corporation. Both companies purchase Grinnell manufactured materials from Grinnell Corporation and occasionally purchase Grinnell manufactured or other materials from each other. The executive officers of Grinnell Company, Grinnell Company, Inc. and Grinnell Corporation are the same. Three of the Board of Directors of Grinnell Corporation constitute the entire boards of directors of Grinnell Company and Grinnell Company, Inc."

In the advertising done by the three companies, a common pattern is observed. The petitioners for the writ (relators)— the three of them—are treated as one. Actually, they hold out the name of "Grinnell" to the public and operate as one; a sample of such advertising is attached as Exhibit 17. It is put out under the trade name, "Grinnell." On the last page of this advertising circular appears the heading "Grinnell Sales Offices and Warehouses" under which are listed 34 offices and warehouses including the one at Denver, Colorado. The warehouse in Denver is the sole business of Grinnell Company. No distinction seems to be made between the manufacturing corporation or the various other so called selling corporations.

In addition, we have before us, brought up as an exhibit below, a huge catalogue in which countless articles manufactured and sold by this triumvirate of companies are listed, described and priced. It is described on the outside front cover "Grinnell—Wherever Piping is Involved—Catalog 51."

On the inside of the catalog, at approximately page 5, there is this statement:

"A partnership formed between a patternmaker and a carpenter in 1850 under the name of the Providence Steam & Gas Pipe Co., occupying a 40 x 60 foot section of the machine shop of the Providence and Worcester Railroad at Providence, Rhode Island, grew up to be the *Grinnell of today, with seven manufacturing plants and twenty-nine warehouses and sales offices located at strategic points* throughout the United States and Canada.

*"Through its Supply Sales Division, which operates its Branch warehouses,* the Company sells both Grinnell manufactured and purchased piping products to a wide variety of customers, * * *." (Emphasis added.)

But, why go on? Enough has been shown (and more appears) to demonstrate that, although the three companies are separately incorporated, their separate entities

are not preserved in the conduct of their overall business sufficiently to enable them to thrust same forward successfully in a claim of immunity to suit in this state.

A more liberal policy has grown up over the years with respect to what affords due process as to a foreign corporation doing business in another state than that of its creation. Especially is this true in setting up criteria by which its activities are to be judged in a determination whether it is doing business within a sister state, so as to subject it to suits in the courts of such state. See the illuminating opinion of Mr. Chief Justice Stone in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, and annotation at 1068.

But this case does not on its facts exactly fit the situation here confronting us. There is here no question but that good service has been made on Grinnell Company. Sufficiency of service on it alone, however, brings little comfort to the plaintiff in the action out of which this proceeding in prohibition grows, unless through the agency of such service others may be brought before the court. The plaintiff in the action sought to be prohibited must go beyond Grinnell Company and, indeed, to the parent corporation, if he is to have practical relief. This means he must establish service on Grinnell Company, Inc., or Grinnell Corporation, one or both, if he is to be afforded practical relief.

We think under the facts here present it could well be concluded that the parent organization, itself, Grinnell Corporation, was doing business in New Mexico through the agency of one of its subsidiaries, Grinnell Company, and that service on the latter sufficed to authorize the court, upon proper request, to bring before the court by amendment the two counterparts of Grinnell Company, to wit, Grinnell Company, Inc., and Grinnell Corporation. There is ample authority to support such a conclusion. See Compania de Astral, S. A. v. Boston Metals Co., 205 Md. 237, 107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646, and annotation at page 668; Pergament v. Frazer, D.C., 93 F.Supp. 9; Clover Leaf Freight Lines, Inc., v. Pacific Coast Wholesalers Ass'n, 7 Cir., 166 F.2d 626; Bach v. Friden Calculating Machine Co., 6 Cir., 167 F.2d 679; S. O. S. Co. v. Bolta Co., D.C., 117 F.Supp. 59; General Electric Co. v. Masters Mail Order Co., 122 F.Supp. 797; Industrial Research Corporation v. General Motors Corporation, D.C., 29 F.2d 623; Fish v. East, 10 Cir., 114 F.2d 177; Sterling Novelty Corp. v. Frank & Hirsch Distributing Co., Ltd., 299 N.Y. 208, 86 N.E.2d 564, 12 A.L.R.2d 1435; Sales Affiliates, Inc., v. Superior Court for Los Angeles, 96 Cal.App.2d 134, 214 P.2d 541; Fielding v. Superior Court, 111 Cal.App.2d 490, 244 P.2d 968, certiorari denied, Westwood Pharmacal Corp. v. Fielding, 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 693.

In S. O. S. Co. v. Bolta Co., the court said [117 F.Supp. 61]:

"A circular distributed by the Bolta companies upon the introduction of the Scour Puss appears following page 5 of the plaintiffs' brief. In this circular the principal products of all of the Bolta companies were referred to. No distinction was made between the several companies but the advertisements were carried under the heading 'Bolta proudly presents.' From this and the other advertising appended to the plaintiffs' brief, it is clear that all of the Bolta products were presented in advertising to the public without identification of the particular Bolta companies dealing in the several products. * * *

"Notwithstanding the common advertising, all sales, billings and bookkeeping records of the Bolta companies are confined to the company which is associated with the particular product.

*    *    *    *    *    *

"Plaintiffs rely upon the strong line of recent cases typified by Clover Leaf Freight Lines v. Pacific Coast Wholesalers Association, 7 Cir., 1948, 166 F.2d 626; Chicago, Milwaukee & St. Paul Ry. Co. v. Minneapolis Civic & Commerce Association, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229; and Blum v. Postal Telegraph, Inc., D.C.Pa.1944, 54 F.Supp. 898.

*    *    *    *    *    *

"The defendants seek to distinguish the application of these cases by pointing out that they involved a wholly owned and controlling subsidiary, whereas in the instant case no such relationship exists. The application of the principle to a mechanical identity in the nature of the relationship cannot be restricted. It is true that here there is an ingenious variant in the usual method of control; yet it is no less effective and real. It is accomplished through a family group supplemented by a management contract in the control of the founder of the business. * * *

"It follows, therefore, that service upon the agent of Bolta Products Sales, Inc. was practical and sufficient service upon all of the Bolta companies."

We quote from Satterfield v. Lehigh Valley R. R. Co., supra [128 F.Supp. 671], as follows:

"I believe that Millard was 'doing business' in this district within the meaning of 28 U.S.C. § 1391(c). The issue in every case is whether the nature of the foreign corporation's contacts with the judicial district in which it is sued is sufficient to justify subject-

ing it to suit in that district. Cf. Perkins v. Benguet Consolidated Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. In this case Millard's contacts with this district arise out of the activities of R. D. Bates Co. Bates is in effect Millard's sales agent in New York City. The fact that Bates is an independent business organization which receives its compensation in the form of a 'commission' rather than a salary is not controlling. Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184, certiorari denied, 1949, 338 U.S. 867, 70 S.Ct. 141, 94 L.Ed. 531; Arpad Szabo v. Smedvig Tankrederi A.S., D.C.S.D.N.Y.1951, 95 F.Supp. 519; cf. Bomze v. Nardis Sportswear, Inc., 2 Cir.1948, 165 F.2d 33; Sterling Novelty Corp. v. Frank & Hirsch Distributing Co. (Pty.) Ltd., 1949, 299 N.Y. 208, 86 N.E.2d 564, 12 A.L.R.2d 1435. Millard's continuous and long continued activities in this district by which its products are sold through R. D. Bates Co. justify its being sued in this district even though the suit is not based on a transaction which occurred in this district. * * *

"The remaining question deals with the validity of the manner in which the alleged service of process on Millard was effected. Process was served on an office manager of R. D. Bates Co., one E. H. Johnson. It is well settled that service on the agent whose activities establish that defendant is doing business in the district is sufficient service on the foreign corporation. * * *."

In Bishop v. United States, 16 F.2d 410, 415, the 8th Circuit Court of Appeals said:

"It is well-settled law, as stated by this court in Chicago Mill & Lumber Co. v. Boatmen's Bank, 234 F. 41, 45, that 'when one corporation owns or controls the entire property of another, and operates its plant and conducts its business as a department of its own business, or as its alter ego, it is responsible for its obligations incurred in so doing.'"

The case most relied upon by relators is that of Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 251, 69 L.Ed. 634. The court simply held there that the separation of corporate identity had been sufficiently maintained and on that theory that the defendant sued was not doing business in the jurisdiction of the forum where sued. Said the court:

"The corporate separation, though perhaps merely formal, was real. It was not pure fiction. There is here no attempt to hold the defendant liable for an act or omission of its subsidiary

or to enforce as against the latter a liability of the defendant. Hence, cases concerning substantive rights, like Hart Steel Company v. Railroad Supply Co., 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 1148, [other citations omitted] have no application."

The quoted language itself distinguishes that case from this one. The Cannon Mfg. Co. case held that if sufficient separateness between the parent and the subsidiary was maintained, the foreign parent was not subject to the local jurisdiction. However, as pointed out in the article in 56 Cal.L.Rev. 394, at p. 409:

"The doctrine has been narrowed down by more liberal findings by the courts as to when the parent and its subsidiary are so conducting their affairs that they are no longer separate entities, but merely principal and agent in one organization. * * *

"The courts will also take account of representations of a corporation as to where it is conducting its operations. For example, one case has held that where a parent company has represented in its literature that it has an office in a state in which only its subsidiary is engaged in activities, the parent should be taken at its word and be subject to suit in the local forum.

Gray v. Eastman Kodak, D.C.E.D.Pa. 1930, 53 F.2d 864."

In a seven-page comment on the Cannon Mfg. Co. case, supra, the author says that the result "shocks one's common sense." 20 Ill.L.Rev. 281 (1925).

In their reply brief counsel for relators, themselves, have this to say:

"In the instant case, it is admitted that the activities of Grinnell Company constitute doing business in New Mexico within the rule of *International Shoe* and the only question in this proceeding is whether or not the Grinnell Company is the *alter ego* of Grinnell Corporation and/or Grinnell Company, Inc."

Since this is exactly the situation confronting us here and the service on Grinnell Company is admittedly good, this brings before the Court the two missing corporations, each as an *alter ego* of Grinnell Company, the case only lacking the formality of an amendment to add them as parties defendant.

It follows from what has been said that the alternative writ was improvidently issued and should, therefore, be discharged.

It will be so ordered.

LUJAN, C. J., and McGHEE, COMPTON and KIKER, JJ., concur.