482 P.2d 332

**Leonard E. HILL, Plaintiff and Appellant,**
**v.**
**ZALE CORPORATION, Defendant**
**and Respondent.**

No. 12136.

Supreme Court of Utah.

March 9, 1971.

Richard M. Day, Salt Lake City, for appellant.

Samuel Bernstein, Bruce G. Cohne, George W. Speciale, Salt Lake City, for respondent.

CROCKETT, Justice:

Plaintiff Leonard E. Hill filed this action against Zale Corporation, a Texas corporation, seeking to recover for wages, an incentive award, vacation pay and moving expenses, totaling about $2500, which he claims to be due for services rendered defendant in Anchorage, Alaska. Service of summons was made upon Richard

Hankin upon the claim that the defendant was doing business in the state of Utah and that Hankin was an officer upon whom process could be served. The district court granted the motion of the defendant Zale to dismiss the action on the ground that there had been no proper service of summons upon the defendant, stating:

> that the defendant is a corporation duly organized and existing under the laws of the State of Texas and is not subject to service of process within the State of Utah.

On this appeal the plaintiff challenges that ruling.

The Zale organization has many retail stores, which deal in jewelry and related items, in a number of states. The plaintiff was first employed in Zale Stores in Utah in February of 1960. He continued to work in various Zale stores in Utah, Idaho and Alaska for 9½ years. When he terminated he was working in the store at Anchorage, Alaska; and it is with respect to his employment there that he asserts the claims herein sued upon.

Due to the separate sovereignties of our states and the jurisdiction of their courts therein, the question is perennial as to the acquisition of jurisdiction over residents of other states.[1] This court, from time to time, has had occasion to decide cases as

---

1. The foundational case in this field is Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565; and see Articles in 1970 Utah L. Rev., p. 222; 73 Harvard L.Rev. 909; 104 U. of Pa.L.Rev. 381.

to whether a foreign corporation was sufficiently "doing business" within the State that it should be regarded as being present here and subject to the service of process and the jurisdiction of our courts.[2] In recent years, due in part to the acceleration in transportation, communication and the concomitant deployment of businesses throughout the various states, there has been a growing tendency in the law toward greater liberality in holding such foreign corporations amenable to the jurisdiction of the courts where such business is carried on.[3]

Our Rule 4(e), U.R.C.P., provides for service of summons:

(4) * * * *upon any corporation,* not herein otherwise provided for, * * and the defendant has, * * * an office or place of business in this state, *or does business in this state,* then upon the person doing such business * * *.

Consistent with the modern trend mentioned above, our Utah legislature, by Chap. 246, S.L.U.1969 (now included in our Code as Secs. 78–27–22 et seq.), enacted a version of what is sometimes referred to as "The Longarm Statute" in which "It is declared * * * that the public interest demands the state provide its citizens with an effective means of redress against nonresident persons, who through certain significant minimal contacts with this state, incur obligations to citizens entitled to the state's protection * * * because of * * * increased * * * flow of commerce between the several states * * *." Section 78–27–23(2) provides:

The words "transaction of business within this state, mean activities of a nonresident person, his agents, or representatives in this state *which affect persons or businesses within the state of Utah.*

■ It is appreciated that the language just quoted is necessarily a broad-sounding generality; and that it must be so interpreted and applied as to conform with basic concepts of fairness and due process of law. This mandates that a foreign corporation should not be subjected to undue difficulties from lawsuits merely because its products are distributed in this State, or may be purchased and sold by others therein.[4] On the other hand, when a foreign corporation is permitted to enjoy the advantages of having activities

2. See Wein v. Crockett, 113 Utah 301, 195 P.2d 222; Western Gas Appliances, Inc. v. Servel, Inc., 123 Utah 229, 257 P.2d 950 (1953) ; McGriff v. Charles Antell, Inc., 123 Utah 166, 256 P.2d 703 (1953) ; Dykes By and Through Dykes v. Reliable Furniture Co., 3 Utah 2d 34, 277 P.2d 969 (1954) ; Conn v. Whitmore, 9 Utah 2d 250, 342 P.2d 871.

3. See authorities footnote 1 above.

4. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

carried on within a state to further its business interests under the protection of its laws, it is only fair and reasonable that its citizens have some practical means of redress if grievances arise.

A landmark case in this field is International Shoe Co. v. Washington [5] wherein the United States Supreme Court stated:

> * * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have *certain minimum contacts* with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

■ If there is any difference between what is stated as the "doing business" and the "minimal contacts" tests it is probably more in semantics than in substance. In practical application they are essentially the same.[6] When the problem arises, its solution depends on whether it can fairly be said that the corporaton is doing business within the State in a real and substantial sense. This involves the analysis of a number of factors, none of which is alone the sine qua non to establish a business presence in the State, but from a consideration of the total picture as to the existence or absence of them the answer to that critical question is to be found:

1. Whether there are local offices, stores or outlets;

2. The presence of personnel, how hired, fired and paid; the degree of control and the nature of their duties;

3. The manner of holding out to the public by way of advertising, telephone listings, catalogs, etc.;

4. The presence of its property, real or personal, or interest therein, including inventories, bank accounts, etc.;

5. Whether the activities are sporadic or transitory as compared to continuous and systematic;

6. The extent to which the alleged facts of the asserted claim arose from activities within the state;

7. The relative hardship or convenience to the parties in being required to litigate the controversy in the state or elsewhere.[7]

The facts in this case which were before the trial court on the defendant's motion, and therefore on this review, are to be found in the pleadings, the affidavit of the defendant's President, Ben A. Lipshy; and in the defendant's responses to request for admissions, and to written interrogatories submitted by the plaintiff. Zale-Texas Corporation characterizes it-

5. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

6. Cf. A. L. I. Restatement, Judgments, Sec. 22.

7. See Cosper v. Smith & Wesson, 53 Cal.2d 77, 346 P.2d 409; Fisher Governor Co. v. Superior Court, 53 Cal.2d 222, 1 Cal. Rptr. 1, 347 P.2d 1.

self as "the parent corporate entity of numerous wholly-owned subsidiaries engaged in the business of retail merchandising." There are stores in a number of states, including Utah and Alaska; each of the several Zale stores in Utah is a separate Utah corporation. The officers and directors of the Zale-Texas Corporation and of the stores in Utah are practically identical. This includes the fact that Ben A. Lipshy, who is President of the Zale-Texas, is also President of the Zale stores in Utah; and that Esir Wyll is Secretary, and that Shearn Rovinski is Treasurer, of both corporations. Neither in the holding out to the public: the advertising, the publicity concerning their stores, nor in the directory which Zale publishes listing the Utah stores under the heading of "Jewelry Directory" is there any indication that the responsible entity is a separate foreign corporation. With respect to its various stores the defendant Zale-Texas states that it is engaged in the "coordination of activities of all subsidiaries in order to achieve economies * * *" in various operations common to their stores. One example of this is their security division which administers polygraph tests to employees and investigates such things as inventory shortages.

The auditing functions relating to the internal operations of the stores are handled through the general office of the Zale-Texas Corporation. It also appears that the Utah stores do not maintain individual checking accounts. The money collected is deposited to the credit of Zale-Texas Corporation which disburses it. During the years plaintiff worked in the various Zale stores, he never received pay checks from the individual store, but always received them from the Zale-Texas Corporation. He also asserts that such matters as wages and incentives had to be determined and approved by the Zale-Texas management.

As to Mr. Richard Hankin, who was served with summons: Defendant answered that he is Assistant Vice President and Regional Manager of Zale Stores Division; and that he is "Supervisor of certain Zale stores in the western part of the United States," which, of course, includes Utah; and that he has his office in Salt Lake City.

These further observations are pertinent: While the place where the activities giving rise to a cause of action occurred is a factor to be considered, it is not essential that they occurred in this State.[8] Bearing on that matter is the fact the plaintiff was originally hired by Zale here in Utah. Some reference is made to hardship or inconvenience to the foreign

8. See Perkins v. Benguet Consolidated Mining, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485.

corporation being sued in other than its home state. It is true that this is talked of in some cases. But it should be kept in mind that the hardship or inconvenience to a plaintiff should also be given consideration. In this instance, Zale-Texas maintains the office here in Salt Lake with respect to which it states in its brief that it is "a convenient central location from which to. maintain coordination of activities of the various western subsidiaries." It certainly has control of its own records and it seems that they would be as available for use in Utah as in Texas or in Alaska. In summary we are not impressed that there is anything particularly unjust or inequitable in having the suit between these parties tried in Utah.

In looking at the total fact situation here presented in the light of what we have said above in this decision, it is our opinion that the defendant corporation has in a continuous and regular manner over a period of years maintained such contacts and carried on such activities within the state of Utah by the various means it employs that it should be subject to the jurisdiction of its courts;[9] and that its Vice President, Richard Hankin, was a proper officer to receive service of process.

Remanded for further proceedings consistent with this opinion. Costs to plaintiff (appellant). (All emphasis added.)

CALLISTER, C. J., and TUCKETT, HENRIOD, and ELLETT, JJ., concur.

9. An analogous case to ours is State ex rel. Grinnel Co. v. MacPherson, 62 N.M. 308, 309 P.2d 981, cert. denied, 355 U.S. 825, 78 S.Ct. 32, 2 L.Ed.2d 39 (1957), where a parent manufacturing corporation, with two subsidiary selling corporations sharing common directors and Secretary with parent, and which bore same basic name was held to be in fact "a giant octopus corporation" and that "service of process upon the one selling corporation which was qualified to do business in state was sufficient to confer jurisdiction upon the other two corporations." Of similar import is the case of Cosper v. Smith & Wesson; and cf. Fisher Governor v. Superior Court both cited in footnote 7 above. Cf. also Cannon Mfg. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), where the U.S. Supreme Court refused to hold corporations subject to state jurisdiction for activities of its subsidiaries. However, the court stated at 336, 45 S.Ct. at 251: "No question of the constitutional powers of the state, or of the federal government, is directly presented," and went on to indicate that there was no statute authorizing the conferring of jurisdiction. This was prior to the long-arm statutes, a version of which Utah has now adopted.