PRODUCERS LIVESTOCK LOAN
COMPANY, a Utah Corporation,
Plaintiff and Appellant,

v.

John Clair MILLER and Peter S. Leva-
tich, Defendants and Respondents.

Nos. 15324, 15325.

Supreme Court of Utah.

May 26, 1978.

**604** 

David E. West of Armstrong, Rawlings, West & Schaerrer, Salt Lake City, for plaintiff and appellant.

Ricàrdo B. Ferrari of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

Plaintiff, Producers Livestock Loan Company, a Utah corporation, brought action against defendants John Clair Miller and Peter S. Levatich, two New York residents, to recover balances due on promissory notes. Defendants were served as provided in U.C.A.1953, section 78–27–25, the so-called Long-Arm Statute. From the granting of defendants' motions to dismiss for lack of jurisdiction over them, the plaintiff appeals.

In the fall of 1972, George L. Smith, a Utah resident, was contacted by a Mr. Walter Ulicny who represented himself to be an investment advisor for defendants. Mr. Ulicny asked Smith if he would be willing to manage a livestock operation for his clients, defendants. Smith agreed to manage the operation through a corporation known as GLS Livestock Management, Inc.

Shortly thereafter the defendants sent an application to plaintiff's office in Salt Lake City and obtained a loan for which the notes sued upon were given; and thus arranged credit upon which Smith could draw in order to carry on the operation of buying, feeding, managing and selling cattle for the defendants.

Commencing in November of 1972 and continuing until June, 1974, Smith proceeded in accordance with that arrangement to so manage a specific number of cattle, expressly designated as belonging to and being managed for the defendants. It is true, and defendants assert, that the cattle were actually kept in California and in Arizona; and that the feed purchased was delivered to and the feeding was done in those places. Each month Smith made a report to the defendants, giving detail as to the cattle he was managing for them, the handling of the finances with respect thereto, the status of the loan with the plaintiff Producers, and the value of the cattle. It is further true that Smith also managed cattle for others besides the defendants and that in order to effect economics and facilitate feeding them he often combined cattle owned by several people in one location, such as the Norwood Cattle Feeding Pool in Arizona. However, at no time did defendants' cattle lose their designation as defendants' personal property.

A significant aspect of the facts under scrutiny here is that the only office George L. Smith had was in Salt Lake City and that that was the place from which he carried on this business for the defendants. Furthermore, it was here that Smith executed the drafts for money to be paid on defendants' behalf, which were delivered to plaintiff Producers Livestock's bank and the money was disbursed therefrom.

Our Long-Arm Statute, U.C.A.1953, 78 27–22, et seq., upon which the basis for acquiring jurisdiction over the defendants must be found provides in Sec. 24:

Any person . . . who in person or *through an agent* does any of the following enumerated acts submits himself . . . to the jurisdiction of the courts of this state as to any claim arising from:

(1) The transaction of any business within this state; . . . [Emphasis added.]

The legislature has declared our public policy to be that our citizens should have the most efficient and effective means permissible under constitutional limitations to enforce claims against nonresidents of our state. Sec. 22 states that the act:

. . . should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.

We consider it our responsibility to give effect to that objective by extending the jurisdiction of our courts as far as the limitations of fairness and established law will permit.[1] Nevertheless, we acknowledge the practical necessity and desirability of those limitations and we have neither any intention nor desire to go beyond them. Some examples which illustrate what we regard as necessary and practical limitations are these: where a person buys stock in a corporation, such as U. S. Steel or General Motors, where the enterprise is located in and carried on in another state; or where a manufacturer advertises and distributes his products for sale through independent dealers or retailers in other states; or where persons who are merely traveling through or vacationing in other states engage in single and transitory transactions for the purpose of normal subsistence and activities.[2]

Notwithstanding the trend toward liberality in extending jurisdiction the law remains firmly established that contacts of the transitory nature involved in the foregoing examples are not sufficient.[3] In that regard it is pertinent here to make these observations: that in describing the test to be applied the phrases commonly used are "a business presence," while others speak of "minimum contacts." Such difference as there is in actual application to given fact situations is to be found in the commonly understood meaning of those expressions.

■ It is suggested, and there seems to be validity to the idea, that when the activity or conduct out of which the claimed liability arose occurs in the forum state, for example, where the contract was executed, or is to be performed, in whole or in part, or where an alleged tort occurred, courts are generally more disposed to apply the "minimal contacts" test and to find jurisdiction.

On the other hand, where the activity or conduct upon which the claimed liability is based occurred elsewhere, the courts are and probably should be, more inclined to require the so-called "business presence" test and are somewhat less inclined to find jurisdiction.[4] In either situation the fundamental proposition remains that in order to assert jurisdiction over a party it must appear that he engaged in some substantial activities within the state beyond the merely transitory matters mentioned above, so that it is reasonable and just to assume that he has had the benefit of the protections and advantages of the laws and institutions of the state to the extent that it is within the concept of fairness and due process that he be subjected to the jurisdiction of its courts.[5]

■■ Due to the increased facilities in transportation and commerce in our country there seems to be an increasing number of cases involving the problem here confronted. It has often been said that each case should be analyzed and adjudged upon its own particular facts.[6] Because the facts relating to this controversy are set forth in the pleadings, affidavit and deposition form, the usual indulgence of the trial court's prerogative in judging credibility of witnesses does not obtain here. This Court is as able to analyze the undisputed facts as is the trial court.

The undisputed facts are that insofar as the business between the plaintiff Producers Livestock and the defendants Miller and Levatich is concerned, the business of buying, feeding, managing and marketing cattle was carried on for the defendants by George L. Smith with the plaintiff in and from Salt Lake City. It is fundamental that where one authorizes another to act for him and for his intended benefit that, insofar as the latter is doing acts within the

1. See *Abbott G. M. Diesel, Inc. v. Piper Aircraft Corp.,* Utah, 578 P.2d 850 (1978); *Pellegrini v. Sachs & Sons,* Utah 522 P.2d 704.

2. *Dahnken, Inc. of Cottonwood v. Marshinsky,* Utah, 580 P.2d 596 (No. 15335, May 1978).

3. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

4. See *Hill v. Zale Corp.,* 25 Utah 2d 357, 482 P.2d 332.

5. *Hanks v. Admr. of Est. of Jensen,* Utah, 531 P.2d 363.

6. *Foreign Study League v. Holland-America Line,* 27 Utah 2d 442, 497 P.2d 244.

scope of the authority given, or acts reasonably calculated to further that purpose, the principal so authorizing is deemed to be performing those acts himself.[7] Thus the activities of Mr. Smith for the defendants in dealing with the plaintiff should be considered as though they were doing it themselves.

Upon considering the facts just recited in the light of the principles of law discussed herein, it is our opinion that the activities of the defendants Miller and Levatich by themselves, and through George L. Smith acting on their behalf, constituted substantial and continuous activities within the state of Utah. It is within our conception of fairness and due process of law that they be subject to the jurisdiction of our courts through the "Long-Arm Statute" procedure and be required to respond to claims in connection with that business.

The order of dismissal is reversed and the case is remanded for further proceedings. Costs to plaintiff (appellant).

HALL, J., concurs.

WILKINS, J., concurs in the result.

ELLETT, C. J., and MAUGHAN, J., dissent.

---

7. The axiom is facit per alium facit per se. Cited in 35 C.J.S. 489.