MALLORY ENGINEERING, INC.,
Plaintiff and Respondent,

v.

TED R. BROWN & ASSOCIATES, INC.,
Defendant, Crossclaimant, Respondent
Defendant to Valad's Counterclaim and
Appellant,

and

Valad Electric Heating Corp., Defendant,
Cross-Defendant, Counterclaimant
and Appellant.

Nos. 15530, 15544.

Supreme Court of Utah.

March 6, 1980.

Allen H. Tibbals, Salt Lake City, for Brown.

Robert B. Sykes, Salt Lake City, Godfrey P. Schmidt, New York City, for Valad.

Quentin L. R. Alston and William J. Cayias, Salt Lake City, for Mallory.

MAUGHAN, Justice:

This appeal is brought from a judgment of the Third District Court of Salt Lake County, which awarded damages to the plaintiff for a manufacturer's breach of a contract to supply goods within the State. The district court also awarded the plaintiff damages against a third party supplier, but granted the supplier a judgment against the manufacturer to indemnify his liability to the plaintiff and cover the supplier's losses resulting from the manufacturer's breach. We affirm. All statutory references are to Utah Code Ann., 1953, as amended. Costs awarded to Mallory Engineering, Inc., and Ted R. Brown & Associates, Inc., against Valad Electric Heating Corp.

This case concerns a series of bifurcated commercial transactions involving plaintiff, Mallory Engineering, Inc. (hereafter Mallory), and defendants, Ted R. Brown & Associates, Inc. (hereafter Brown) and Valad Electric Heating Corp. (hereafter Valad). In the latter part of 1972 and the early part of 1973, Mallory, which is a Utah corporation with its principal place of business in Salt Lake City, Utah, had certain contract commitments to manufacture for the United States government some specially designed environmental units. Following preliminary negotiations, Mallory contracted with Brown, a Utah corporation, with its principal place of business in Salt Lake City, Utah, for the supply of certain heating units of precise and exacting specification for use in the environmental units. Thereafter Brown entered into an agreement with Valad, a New York corporation, with its principal place of business in Tarrytown, New York, for the manufacture and subsequent delivery to Mallory of the requisite heating units. As the manufacturer, Valad issued to Mallory, on March 13, 1973, a Certificate of Certification for two of the several heating models. The heating units manufactured by Valad and supplied by Brown were found by Mallory to be defec-

tive. While Valad furnished replacements for one model which Mallory employed in its production, the remaining defective models were not replaced. Also, some ordered models were never received by Mallory.

The district court found, concerning the defective units that were not replaced and the nondelivered heating units, Brown breached its agreement with Mallory and Valad breached its agreement with Brown. The district court granted Mallory judgment against Brown and Valad. The court also awarded to Brown judgment against Valad.

The crucial issue presented by this appeal involves the amenability of Valad, a nonresident defendant, to the jurisdiction of the Utah state courts. The Utah "Long Arm Statute." § 78–27–24 provides:

> Any person [1] . . . whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:
>
> \* \* \* \* \* \*
>
> (2) Contracting to supply services or goods in this state;

The broad dictate of this legislative grant of jurisdiction is explained in the legislative statement of the purpose of the act as found in § 78–27–22:

> It is declared, as a matter of legislative determination, that the public interest demands the state provide its citizens with an effective means of redress against nonresident persons, who through certain significant minimal contacts with this state, incur obligations to citizens entitled to the state's protection. . . .
>
> The provisions of this act, to ensure maximum protection to citizens of this state, should be applied so as to assert jurisdiction over nonresident defendants

---

1. Under § 78–27–23, the words "any person" are defined as "any individual, firm, company, association, or corporation."

to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.

■ Although early decisions concerning the scope of this legislation applied a restrictive interpretation,[2] this Court's most recent decisions recognize the expansive grant of jurisdictional power which the legislation embodies. As we explained in *Abbott G. M. Diesel, Inc. v. Piper Aircraft*:[3]

> Because our Legislature in 1969 declared in clear, specific and mandatory terms that the scope of that personal jurisdiction should be enlarged "to the fullest extent permitted by the due process clause of the Fourteenth Amendment", this Court herein acknowledges that this state's jurisdictional standard should not be more restrictive than those allowed by federal due process limitations.[4]

The definition of these due process limitations on personal jurisdiction was initially addressed by the United States Supreme Court in *International Shoe Company v. Washington*.[5] The Court explained:

> Due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

This abstract notion of "fair play and substantial justice" must be viewed as encompassing the fundamental requirements of procedural due process, i. e., notice and an opportunity to be heard. This relationship was recognized by the Supreme Court in *Milliken v. Meyer*,[6] where the Court explained:

> Its adequacy so far as due process is concerned is dependent on whether or not the form of substituted service [or long arm jurisdiction] provided for such cases and employed is reasonably calculated to give [the defendant] actual notice of the proceedings and an opportunity to be

2. See *Hill v. Zale Corp.*, 25 Utah 2d 357, 482 P.2d 332 (1971); see also *Packaging Corp. of America v. Morris*, Utah, 561 P.2d 680 (1977); *Cate Rental Co., Inc. v. Whalen & Co.*, Utah, 549 P.2d 707 (1976). This restrictive approach was characterized by the retention of the "conducting business" standard which formed one of the bases for jurisdiction over non-resident defendants prior to the enactment of § 78–27–24. This standard was based on the "presence" rationale first explained in *Pennoyer v. Neff*, 96 U.S. 417, 24 L.Ed. 565 (1877). Under this standard, to substantiate jurisdiction over a non-resident defendant, the court required the defendant to engage in some substantial activity with some degree of continuity within the state. The early integration of this standard into the Long Arm Statute is aptly evidenced by the court's statement in *Hill v. Zale Corp.*, id., 25 Utah 2d at 334, 482 P.2d at 334, "if there is any difference between what is stated as the 'doing business' and the 'minimum contacts' test, it is probably more in semantics than substance."

3. *Abbott G. M. Diesel, Inc. v. Piper Aircraft Corp.*, Utah, 578 P.2d 850, 853 (1978).

4. In response to this recognition of the legislative mandate, this Court has recognized the distinction between the "minimal contact" and "doing business" standard. In *Abbott*, id., the court explained, "While it is true that this court

has stated that 'if there is any difference between what is stated as the "doing business" and "minimal contact" tests, it is probably more in semantics than in substance,' we now conclude . . . there can well be a significant and controlling difference in these two concepts." at 852–53. The significance of the difference is found in part in the distinction between general jurisdiction and special jurisdiction. If the defendant's nexus with the state is such that he is "doing business" in the state, the jurisdiction of the court applies generally and he is rendered amenable in the state courts for any cause of action. This jurisdictional standard is embodied in U.R.C.P. § 4(e)(4), and the Long Arm Statute need not be employed. Conversely, if the activities of the defendant are limited in nature or transitory in duration, the courts may assume jurisdiction over that person only in relation to causes of action related to the activity of the defendant in the state. To assume this "special" jurisdiction, the courts must employ the Long Arm Statute. See *Producer's Livestock Loan Co. v. Miller*, Utah, 580 P.2d 603, 605 (1978); see generally Strachan, Kristine, *In Personam Jurisdiction In Utah*, 1977 U.L.Rev. 235 (1977).

5. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

6. *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 343, 85 L.Ed. 278 (1940).

heard. If it is, the traditional notions of fair play and substantial justice (*McDonald v. Mabee*, supra)[7] implicit in due process are satisfied.

These fundamental underpinnings of procedural due process[8] are implicitly recognized by the *International Shoe* delineation of the "minimal contact" standard. Explaining the requirements of the standard, the Court stated:

> Whether due process is satisfied must depend rather [than upon the mechanical or quantitative test of the extent of the nonresident's contacts in the state] upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.[9]

■ The resultant standard for determining a nonresident's amenability to the jurisdiction of the state courts is not whether the nonresident is "present" in the state,[10] but rather whether the nonresident has such contacts with the "state of the forum as make it *reasonable*, in the context of our federal system of government, to require the (nonresident) to defend the particular suit which is brought."[11] [Emphasis added.] This reasonableness standard, incorporating the requirements of fair play and substantial justice, looks to the quality and nature of the nonresident's contacts with the forum state. Therefore, the central concern of the inquiry into personal jurisdiction is the relationship of the defendant, the forum, and the litigation, to each other.[12]

■ To determine the validity of the jurisdiction of the Utah courts, the facts of the present case must be analyzed under this "minimum contacts" standard.[13] Valad is a

7. This reference to *McDonald v. Mabee*, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608 (1917) is particularly illustrative of the general requirements of "fair play and substantial justice" in relation to procedural due process. Particularly relevant to an understanding of the "minimum contact" standard is the Court's statement: "The foundation of jurisdiction is physical power . . . No doubt there may be some extension of the means of acquiring jurisdiction beyond service or appearance, but the foundation should be borne in mind. Subject to its conception of sovereignty, even the common law required a judgment not to be contrary to natural justice. . . . And in states bound together by a constitution and subject to the Fourteenth Amendment, great caution should be used not to let fiction (of power over the person of the defendant) deny the fair play that can be secured only by a pretty close adhesion to fact."

8. The United States Supreme Court explained the foundations of these procedural due process requirements in *Fuentes v. Shevin*, 407 U.S. 67, 80–81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1971): "The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions . . . The requirement of notice and opportunity to be heard raises no impenetrable barrier to the taking of a person's possessions, (or his amenability to suit). But the fair process of decision making that it guarantees works, by itself, to protect against arbitrary deprivation of proper-

ty. For when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property can be prevented. It has long been recognized that 'fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights . . . . [And n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and an opportunity to meet it.' "

9. *International Shoe*, supra note 5, 326 U.S. at 319, 66 S.Ct. at 160.

10. This was the initial standard announced in *Pennoyer*, supra note 2.

11. *International Shoe*, supra note 5, at 317, 66 S.Ct. at 158.

12. *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977); see also *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). In *Kulko*, the Supreme Court succinctly stated the test as "a sufficient connection between the defendant and the forum State as to make it fair to require defense of the action in the forum." at 91, 98 S.Ct. at 1697.

13. As was said in *Foreign Study League v. Holland-America Lines*, 27 Utah 2d 442, 443,

corporation organized and existing under the laws of the State of New York. While its general offices and production plant are located in the State of New York, Valad employs representatives in other states and supplies merchandise to buyers outside the State of New York. Valad has no offices in the State of Utah, owns no property here, and employs no representatives in the State. Valad contends it did not solicit business in Utah, advertise in Utah, or circulate catalogs or other sales material in the state. However, it did engage in negotiations with Brown, a Utah corporation with its principal place of business in Utah, commencing on April 18, 1972, and resulting in an agreement to manufacture for Brown and supply to Mallory, a Utah corporation, at its principal place of business in Salt Lake City, Utah, certain specific heating units. The heating units were required by Brown and Mallory and certified by Valad to meet specified requirements which involved modifications by Valad of its basic catalog models.

By contracting to supply goods in the State of Utah, Valad falls within the purview of § 78-27-23. By its modification of general heating models and their shipment to Utah in fulfillment of this contract, Valad has "purposefully avail(ed) itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[14] Thus, Valad's conduct in relation to the state establishes the requisite minimum factual nexus required by the statute and the applicable case law.[15]

This renders Valad amenable to suit in Utah if the quality and nature of the defendant's activity is such that it is reasonable and fair to require him to conduct his defense in this state.[16] As previously stated, this determination depends on the relationship between the defendant, the forum, and the litigation. Reduced to more practical terms, the remaining inquiry involved in ascertaining the restrictions presented by the requirements of fair play and substantial justice concerns; (1) Whether the cause of action arises out of or has a substantial connection with the activity; and (2) The balancing of the convenience of the parties and the interests of the State in assuming jurisdiction.[17]

Since the present cause of action arose directly out of and is substantially connected to Valad's manufacture of the specific heating units to be supplied to Mallory in the State of Utah, the requisite connection

---

497 P.2d 244, 245 (1972), "cases [of this nature] are strictly factual and are dispositive by the application of case and statutory law to the fact situation presented."

14. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

15. The factual nexus element of the minimum contact standard is related to the concept of the notice of the application of the laws of a particular state to the activities of the non-resident defendant. As expressed by Justice Stevens in his concurring opinion in *Shaffer,* supra note 12, 433 U.S. at 218, 97 S.Ct. at 2587: "The requirement of fair notice also, I believe, includes fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign. . . . My contact with the State, though minimal, gives rise to predictable risk (that the state will exercise its power over my property or my person)." The minimum boundary of this factual nexus requirement was established in *Hanson,* id. There, in restricting the broad interpretation given the *International Shoe* decision in *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78

S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court explained: "It is essential, in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." See *Pellegrini v. Sachs and Sons,* Utah, 522 P.2d 704 (1974).

16. *Kulko v. Superior Court of California,* supra note 12, 436 U.S. at 91, 98 S.Ct. 1690.

17. See *Cornelison v. Chaney,* 16 Cal.3d 143, 127 Cal.Rptr. 352, 545 P.2d 264 (1976). The third aspect of the relationship, i. e., the character of the defendant's activity within the state, incorporates the purposeful activity test of *Hanson,* supra note 14. Since this will be fulfilled, whenever the activity is found to fall within the second category of § 78-27-24, i. e., contracting to supply services or goods in the state, the crucial inquiry and our attention in the present case is directed at the connection between the activity and cause of action, and the interests of the parties.

between the nonresident defendant's activity and the cause of action is present. Therefore, the determination of the amenability of the non-resident Valad hinges on the balancing of the inconvenience [18] to Valad of defending the action in the Utah courts and the interests of the state in assuming jurisdiction.

This Court recognizes that any litigation undertaken in a foreign jurisdiction results in some inconvenience to the nonresident defendant. The fact that Valad had no general offices or operations in the State and scheduled no representation in the State, substantiate its assertions of inconvenience. However, the inconvenience to the nonresident must be viewed in relation to the importance of the conflict litigated, which, in a commercial setting, is evidenced by the amount in controversy. If the amount is trivial in comparison to the expense of litigating in the foreign forum and the possibility of the defendant defaulting reaches sufficient proportions, the demands of fair play and substantial justice dictate the reservation of the state's jurisdictional power.[19] The substantial quantity of the plaintiff's claims and the resultant size of the judgment when viewed in relation to Valad's annual business mitigate these concerns of inconvenience in the present case.

The character of Valad's business, manufacture of heaters for sale in several states, also influences our determination of its inconvenience in litigating away from its general headquarters. In undertaking interstate business, Valad, must recognize and accommodate within its operations the probability and necessity of litigating in foreign forums. While the operation of an interstate business enterprise alone cannot justify personal jurisdiction over a non-resident defendant, the nature of Valad's conduct, i. e., manufacture of products for interstate distribution, justifies placing upon it certain burdens connected with litigating in a foreign forum.

Balanced against the above considerations is the express interest the State of Utah has in ensuring protection to its residents from the unlawful acts of nonresidents. The legislative mandate is clear:

It is declared . . . that the public interest demands the state provide its citizens with an effective means of redress against nonresident persons, who . . . incur obligations to citizens entitled to the state's protection.[20]

Balancing the importance of this interest in relation to commercial transactions involving the supply of goods into the state by a non-resident manufacturer, and the relatively minor degree of inconvenience required to defend this action in Utah, we hold the district court's extension of jurisdiction over Valad to be reasonable. Therefore, the district court's jurisdiction over Valad did not abridge the due process clause of the Fourteenth Amendment, and was a valid exercise of jurisdictional power.

Mallory contends Valad entered a general appearance and thus brought itself within the jurisdiction of Utah courts. Rule 12(b) of the Utah Rules of Civil Procedure provides:

No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion or by further pleading after the denial of such motion or objection.

---

**18.** While the considerations relevant to a forum non conveniens determination are applicable to this question of convenience, they are not dispositive. See *Hanson*, supra note 14, 357 U.S. at 254, 78 S.Ct. at 1240.

**19.** This is mandated by the due process requirement of an opportunity to be heard. Justice Wilkins presented this consideration in his concurring opinion in *Dahnken, Inc. of Cottonwood v. Marshinsky*, Utah, 580 P.2d 596, 598

599 (1978); "The inconvenience and expense to defendant—in the context of this case—' . . . reache[s] sufficient proportions, especially when the plaintiff's claim is relatively small, that the defendant [may well] be financially compelled to default.' " (Quoting from Strachan, In Personam Jurisdiction in Utah, supra note 4, at 259.)

**20.** § 78 ·27 22.

The adoption of this rule has abolished the distinction between general and special appearances in Utah.[21]

Concerning Brown's allegation that he was merely a "conduit" of Mallory, there is sufficient evidence to substantiate the district court's finding that Brown's relationship to Mallory was that of vendor to vendee. As to the remaining issues presented on appeal, the facts substantiate the district court's findings of fact and conclusions of law.

WILKINS, and STEWART, JJ., concur.

*HALL, Justice* (concurring and dissenting):

I concur in affirming the judgment as against Brown. However, I am unable to distinguish the facts of this case as they pertain to the issue of jurisdiction over Valad from those in the case of *Burt Drilling, Inc. v. Portadrill*, Utah, 608 P.2d 244 (1980). Consequently, and in accord with my dissent therein, I am constrained to dissent from the affirmance of the judgment against Valad.

CROCKETT, C. J., concurs in the views expressed in the concurring and dissenting opinion of HALL, J.

---

**21.** See *Ted R. Brown and Associates, Inc. v. Carnes Corp.*, Utah, 547 P.2d 206, 207 (1976).