**KAMDAR & COMPANY, Plaintiff and Appellant,**

v.

**LARAY COMPANY, INC.; Raymond Boal; and James A. Boal, Jr., Defendants and Appellees.**

**No. 900539–CA.**

Court of Appeals of Utah.

July 15, 1991.

Jeffrey N. Walker (argued), Jones, Waldo, Holbrook & McDonough, Salt Lake City, for plaintiff and appellant.

W. Kevin Jackson (argued), Jensen, Duffin, Carman, Dibb & Jackson, Salt Lake City, for defendants and appellees.

Before BILLINGS, ORME and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Kamdar & Company (Kamdar), appeals the dismissal of its complaint against Laray Company, Inc. (Laray), Raymond Boal, and James A. Boal, Jr. for lack of personal jurisdiction. We reverse and remand.

### FACTS

The material facts in this case are uncontroverted.[1] Kamdar is a partnership operating in Utah. Laray is a California corporation, and the two individual defendants are California residents.

In 1971, James A. Boal, then president of Laray, met with Vin Kamdar, a California resident, to arrange to have Kamdar perform accounting and financial services for Laray. During the meeting, Mr. Kamdar informed Mr. Boal that he was relocating his business from California to Utah, but would be willing to perform the accounting services in Utah. Laray agreed to this arrangement. For eighteen years, Kamdar performed virtually all of the defendants' accounting and financial advising needs. In addition, Kamdar performed personal accounting and financial services for James A. Boal, beginning in 1971, and for his son, Raymond Boal, beginning in 1974. During this period, the defendants would send their financial books and records to Kamdar in Utah, and Kamdar would send the various reports, tax returns, statements and comparisons to Laray and the Boals in California. Kamdar's billings for the services rendered were annually sent to the defendants in California, and the defendants' payments were sent to Kamdar in Utah. The parties also frequently corresponded by mail and telephone.

In March 1989, James A. Boal informed Kamdar that its services would no longer be needed. Kamdar submitted its final billing for both corporate and personal accounting and financial services rendered to the defendants in 1988 and 1989. In May 1989, Raymond Boal, who was then acting as president of Laray, sent a letter to Kamdar, disputing the amount billed. Kamdar subsequently filed a complaint in Utah against the defendants to recover $24,336 for financial and accounting services. In response, the defendants filed a motion to dismiss, alleging lack of personal jurisdiction. The trial court ruled on the motion based solely on the pleadings and documentary evidence. The court concluded that it lacked either specific or general personal jurisdiction, and granted the defendants' motion to dismiss.

Kamdar appeals the dismissal, claiming that Utah has personal jurisdiction over the defendants.

### I.  STANDARD OF REVIEW

■ In determining questions of jurisdiction, a trial court may, in its discretion, hold an evidentiary hearing, or base its decision on documentary evidence alone (pleadings, affidavits, and/or discovery). *Anderson v. American Soc'y of Plastic Surgeons*, 807 P.2d 825, 827–28 (Utah 1990). If an evidentiary hearing is held, the plaintiff has the burden of proving

---

1. The trial court based its decision on the pleadings and affidavits. The affidavit of Vin Kamdar, submitted on behalf of Kamdar & Company, is uncontroverted, except that Mr. Kamdar states that he moved his business to Utah in 1971, and the Boals' affidavits state that Kamdar moved to Utah in 1974. This is not a material dispute because the claims arise out of services that were performed in Utah in 1988 and 1989, many years after the move.

jurisdiction by a preponderance of the evidence. *Id.* In such a case, the appellate court would review the trial court's finding under the "clearly erroneous" standard.

However, if the matter is to be determined on the documentary evidence alone, the plaintiff must simply make a prima facie showing of personal jurisdiction. *Id.* If there are material disputes in the documentary evidence, the matter must proceed to trial where the plaintiff must prove jurisdiction by a preponderance of the evidence. *Id.* An appeal from that decision, of course, would be subject to the "clearly erroneous" standard as well.

If there are no material disputes in the documentary evidence, the appellate court reviews the matter de novo to determine whether as a matter of law jurisdiction exists. *Id.* In this case, the trial court did not hold an evidentiary hearing, but based its decision solely on the documentary evidence. The documentary evidence is undisputed, therefore, we review this matter de novo to decide whether or not there is jurisdiction in Utah.

## II. PERSONAL JURISDICTION

The Utah Supreme Court has adopted a two-part inquiry to ascertain whether Utah courts can exercise personal jurisdiction over nonresidents. *See, e.g., Anderson v. American Soc'y of Plastic Surgeons*, 807 P.2d 825 (Utah 1990); *Bradford v. Nagle*, 763 P.2d 791, 793 (Utah 1988). First, claims against a nonresident defendant must arise from the activities enumerated in the Utah long-arm statute. *Anderson*, 807 P.2d 825. Secondly, the defendant's contacts with Utah must be sufficient to allow jurisdiction to be exercised without violation of the due process clause of the fourteenth amendment of the United States Constitution. *Id.*

### A. Utah's Long–Arm Statute

Jurisdiction over nonresidents is granted under Utah Code Ann. § 78–27–24 (1987), which states in part:

Any person ... whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:

(1) The transaction of business within this state. . . .

Transaction of business within this state is defined as "activities of a nonresident person, his agents, or representatives in this state which affect persons or businesses within the state of Utah." Utah Code Ann. § 78–27–23 (1987).

The defendants maintain that since they did not conduct their automotive trade or business within the state, Utah's long-arm statute does not grant the Utah courts personal jurisdiction over them. We disagree.

Utah's long-arm statute grants personal jurisdiction over claims arising out of *any* business transaction within the state. Such is not limited to nonresidents conducting their *own* trade or business within the state. Rather, it is sufficient that nonresidents transact business in Utah regardless of whether it is related to the Utah resident's trade or the business of the nonresident.

For instance, if Laray used a computer in the course of its automotive trade or business, and sent that computer to Utah to be serviced, such would constitute the transaction of business within the State of Utah. If Laray failed to pay for such service, Utah's long-arm statute would grant the Utah courts jurisdiction over Laray. Likewise, in the instant case, defendants sent their financial records to Utah to be "serviced" by Kamdar. Kamdar performed such service, preparing the requisite financial statements and tax returns and sending the same to the defendants with a bill. Such constitutes the transaction of business within the State of Utah as contemplated by the Utah long-arm statute. However, this does not end our inquiry. We must further decide if requiring defendants to defend themselves in Utah's

courts violates the due process clause of the fourteenth amendment of the United States Constitution.

## B. Due Process

The purpose of Utah's long-arm statute is set forth in Utah Code Ann. § 78–27–22 (1987), which states:

It is declared, as a matter of legislative determination, that the public interest demands the state provide its citizens with an effective means of redress against nonresident persons, who through certain significant minimal contacts with this state, incur obligations to citizens entitled to the state's protection.... The provisions of this act, to ensure maximum protection to citizens of this state, should be applied so as to assert jurisdiction over nonresident defendants *to the fullest extent permitted by the due process clause of the Fourteenth Amendment of the United States Constitution.*

(Emphasis added).

"The legislative mandate is clear. The protection afforded by the courts of this state must be applied to the fullest extent allowed by due process of law." *Brown v. Carnes Corp.,* 611 P.2d 378, 380 (Utah 1980). In order to satisfy due process requirements, a defendant's contacts with Utah must be "such that maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Accordingly, the defendants must have "'purposefully avail[ed]' themselves of the privilege of conducting activities here," *Anderson,* 807 P.2d at 828 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)), and they must have "'reasonably anticipate[d] being haled into court' here." *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). We must also balance "the convenience of the parties and the interests of the State in assuming jurisdiction," *Mallory Engineering v. Ted R.*

*Brown & Assocs.,* 618 P.2d 1004, 1008 (Utah 1980) (citations omitted), by examining "the relationship of the defendant, the forum, and the litigation, to each other." *Id.* at 1007 (citations omitted).

▪ The defendants contend that because the initial agreement with Kamdar was entered into in California, they did not purposefully avail themselves of the privilege of conducting business in Utah, nor did they anticipate being hauled into court here. Additionally, they argue that a "convenience of the parties" analysis weighs in favor of litigating in California.

Although the initial agreement was made in California, it was made with an understanding that the disputed services would be performed in Utah. At any time, the defendants were free to choose a new accountant who did not live in Utah. Instead, year after year, for eighteen years, they chose to have a Utah company perform their accounting and financial services. Their books and records were sent to Utah, Kamdar's services were performed in Utah, invoices for the work were prepared in and sent from Utah, and payment for such services was sent to Kamdar in Utah. Clearly, defendants have availed themselves of the privilege of conducting business in Utah.

Furthermore, "[i]n undertaking interstate business [the defendants] must recognize and accommodate ... the probability and necessity of litigating in foreign forums." *Mallory,* 618 P.2d at 1009. The defendants entered into their contract with the knowledge that Kamdar was relocating to Utah and chose nonetheless to have their accounting and financial services performed by Kamdar in Utah. Such actions should have led the defendants to anticipate the possibility of defending themselves in Utah.

Finally, we must balance the interests of the parties to determine whether it is fair to require the defendants to litigate in Utah. Obviously, it is in Kamdar's best interest to have the claim decided in the forum where the accounting and financial services were performed, and where its offices, records and witnesses are located.

Focusing on the defendants' interests, the courts look to purposeful acts by which the defendants avail themselves of the "privileges and protections of the forum." *Nova Mud Corp. v. Fletcher*, 648 F.Supp. 1123, 1126 (D.Utah 1986) (citing *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239). Although it may be somewhat inconvenient for the defendants to litigate in Utah, they chose to have their accounting and financial work performed here, and by purposefully sending all of their financial documents to Utah, they have availed themselves of the "privileges and protections" of Utah. Furthermore, in this case, "the State's interest in protecting the rights of its residents who are adversely affected by the interstate activities of nonresident[s] ... outweighs any inconvenience the defendant[s] may experience in defending [their] activities in [this] state." *Brown*, 611 P.2d at 380. We therefore conclude that it is fair and within constitutional bounds to require the defendants to defend themselves in Utah.

## CONCLUSION

We conclude as a matter of law that the defendants transacted business within the State of Utah as contemplated in the Utah long-arm statute, subjecting them to the jurisdiction of Utah's courts, and that the exercise of such jurisdiction is not violative of the due process requirements imposed by the fourteenth amendment.

The trial court erred in granting defendants' motion to dismiss. The case is reversed and remanded for disposition on the merits.

BILLINGS and ORME, JJ., concur.