**McInnes Services, Inc. v. Pure Metals Corp.**

*Charles Y. Mansell*, for plaintiff.
*Paul Lynch*, for defendant.

COX, *J.*, June 22, 2012—Before the court for disposition is the petition to strike and/or open foreign judgment filed on behalf of the defendants Pure Metals Corporation and Paul Lynch, which argues that the foreign judgment should be stricken or opened as the plaintiff McInnes Services, Inc. has failed to demonstrate that the state of Utah had personal jurisdiction over defendant Lynch because defendant Lynch is not the president of Pure Metals Corporation nor has he had sufficient contacts with the state of Utah.

The plaintiff filed a complaint in the fourth judicial district court of the State of Utah at case number 119104200 against the defendants and obtained a default judgment against defendant Lynch in the amount of $17,586.43 plus additional costs on December 14, 2011. The plaintiff then

filed a praecipe for entry of foreign judgment on December 29, 2011, for the same amount against the defendants with the prothonotary of Lawrence County. On January 9, 2012, the defendants filed a petition to strike and/or open foreign judgment alleging that the judgment should be stricken regarding Pure Metals Corporation as they were not included on the original judgment entered in Utah. In addition, the defendants contend that the foreign judgment should be stricken or opened regarding defendant Lynch as he did not have sufficient contacts with the state of Utah to confer personal jurisdiction to the District Court of Utah. In support of the latter contention, the defendants have provided the court with minutes of the organizational meeting and directors' meeting, which indicate that Paul Lynch and Charles Barletto are the directors of Pure Metals Corporation and Charles Barletto was elected as president of the Corporation while defendant Lynch was elected as secretary and treasurer of the corporation. In response, the plaintiff argues that defendant Lynch has represented to them that he was president of the corporation and he was identified as the only incorporator on the articles of incorporation filed with the Commonwealth of Pennsylvania Department of State. Moreover, the plaintiff avers that defendant Lynch had numerous contacts with the State of Utah, such as telephone conversations and e-mails regarding the underlying contract.

The parties have stipulated that the foreign judgment should be stricken regarding Pure Metals Corporation as it was not named in the original judgment entered in Utah. The court must now address whether defendant Lynch was subject to Utah's Long-Arm Statute and whether personal jurisdiction was properly exercised regarding the original

judgment.

The authority to open a default judgment is vested in the equitable powers of the court and will only be upset if an abuse of discretion occurs. *PNC Bank, N.A. v. Unknown Heirs*, 929 A.2d 219, 228 (Pa. Super. 2007). In order to open a default judgment, the petitioner must establish the following: "(1) the petition to open must be promptly filed; (2) the failure to appear or file a timely answer must be excused; and (3) the party seeking to open the judgment must show a meritorious defense." *Id.* (citations omitted). In order to open a judgment, the petitioner must aver a valid defense and establish equitable considerations that provide the court with an impression that there is a need for relief. *Ehnes v. Wagner*, 388 Pa. 102, 104, 130 A.2d 171, 172 (1957) (citing *Lened Homes, Inc. v. Dept. of Licenses and Inspections*, 386 Pa. 50, 53, 123 A.2d 406, 407 (1956)).

It is well established that the petitioner must prove each of the following: "1. the petition was promptly filed after the judgment was entered; 2. a legitimate explanation exists; and 3. a meritorious defense to the underlying substantive claim is advanced." *Rounsley v. D.C. Ventre & Sons, Inc.*, 361 Pa. Super. 253, 256, 522 A.2d 569, 571 (1987) (citing *Wolfskill v. Egan*, 350 Pa. Super. 223, 504 A.2d 326, 327 (1986)). "There must be more than mere conflict of evidence, or oath against oath, but such evidence as would persuade the court that, upon submission of the issue to a jury, a verdict in their favor could be upheld." *Ehnes*, supra. (citing *Ahrens v. Goldstein*, 376 Pa, 114, 121, 102 A.2d 164, 167 (1954)). The petitioner bears the burden of producing evidence that a valid defense exists.

*Haggerty v. Fetner*, 332 Pa. Super. 333, 339, 481 A.2d 641, 644 (1984) (citation omitted).

A petition to strike a judgment differs from a petition to open in that a petition to strike is a common law proceeding and operates as a demurrer to the record and the petition to open is an appeal to the court's equitable powers. *Cintas Corp. v. Lee's Cleaning Services, Inc.*, 549 Pa. 84, 700 A.2d 915 (1997); *Resolution Trust Corp. v. Copley Qu-Wayne Associates*, 546 Pa. 98, 683 A.2d 269 (1996); *McCoy v. Public Acceptance Corp.*, 451 Pa. 495, 305 A.2d 698 (1973). A petition to strike will only be granted where a fatal defect appears on the face of the record. *First Union Nat. Bank v. Portside Refrigerated Services, Inc.*, 827 A.2d 1224, 1227 (Pa. Super. 2003). As a result, the court will not look beyond the record in determining whether to strike a judgment. *Id.* However, the court may look to facts outside of the record when determining whether to open a judgment. *Comyn v. Southeastern Pennsylvania Transp. Authority*, 141 Pa. Cmwlth. 53, 594 A.2d 857 (1991). If the judgment is self-sustaining it cannot be stricken from the record. *Malakoff v. Zambar, Inc.*, 446 Pa. 503, 506, 288 A.2d 819, 821 (1972) (citing *Weinberg v. Morgan*, 186 Pa. Super. 322, 325, 142 A.2d 310, 312 (1958)). "A judgment may be stricken only where the circumstances which are relied on to establish that the judgment was improperly or irregularly entered do in the law have that effect." *DeCoatsworth v. Jones*, 536 Pa. 414, 422, 639 A.2d 792, 796 (1994) (quoting 12 Standard Pennsylvania practice 2d section 71:177).

The defendants have raised issues regarding the Utah Long-Arm statute and whether that statute provided the

District Court of Utah personal jurisdiction over defendant Lynch. The express purpose of the Utah Long-Arm statute is stated as follows:

> It is declared, as a matter of legislative policy, that the public interest demands the state provide its citizens with an effective means of redress against nonresident persons, who, through certain significant minimal contacts with this state, incur obligations to citizens entitled to the state's protection. This legislative action is necessary because of technological progress which has substantially increased the flow of commerce between the several states resulting in increased interaction between persons of this state and persons of other states. U.C.A. § 78B-3-201(2).

The acts that avail a person of the state's protection are explained in U.C.A. § 78B-3-205. That statute asserts:

> [A]ny person or personal representative of the person, whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to:
>
> (1) the transaction of any business within this state;
>
> (2) contracting to supply services or goods in this state;
>
> (3) the causing of any injury within this state whether tortious or by breach of warranty;
>
> (4) the ownership, use, or possession of any real estate

situated in this state;

(5) contracting to insure any person, property, or risk located within this state at the time of contracting;

(6) with respect to actions of divorce, separate maintenance, or child support, having resided, in the marital relationship, within this state notwithstanding subsequent departure from the state; or the commission in this state of the act giving rise to the claim, so long as that act is not a mere omission, failure to act or occurrence over which the defendant had no control; or

(7) the commission of sexual intercourse within this state which gives rise to a paternity suit under title 78B, chapter 15, Utah uniform parentage act, to determine paternity for the purpose of establishing responsibility for child support. U.C.A. §78B-3-205.

To find that Utah courts have personal jurisdiction over a nonresident, the court must determine that the claims against the defendant arise from the activities enumerated in U.C.A. § 78-3-205 and the contacts with Utah must be sufficient to allow jurisdiction to be exercised without violating the due process clause of the United States Constitution. *Radcliffe v. Akhavan*, 875 P.2d 608, 611 (Utah App. 1994) (citing *Anderson v. American Society of Plastic Surgeons*, 807 P.2d 825, 827 (Utah 1990)). Due process requires that the defendant must have had minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Ervin v, Lowe's Companies, Inc.*, 128 P.3d 11,17 (Utah App. 2005) (quoting *Parry v. Ernst Home*

*Ctr. Corp.*, 779 P.2d 659, 662 (Utah 1989)). "In performing the minimum contacts analysis, we look at whether the defendant...' purposely availed itself of the privilege of conducting activities within the forum state' and whether there was a 'balancing of the convenience of the parties and the interests of the state in assuming jurisdiction.'" *Id.* (quoting *Perry*, 779 P.2d at 662). In Ervin, the court determined that minimum contacts were not established by the corporation selling products to Utah among many other locations in the United States as "knowledge of the mere possibility that its product might be taken into a region of the country in which Utah is located is not sufficient... to make a difference in this regard." *Id.*, 128 P.3d at 18 (quoting *Perry*, 779 P.2d at 667). Moreover, in *Radcliffe*, the court decided that the minimum contacts test was satisfied when an out-of-state resident met with another party in Utah on three occasions to negotiate purchasing a Utah business and the agreement was reached in Utah because those activities made it reasonable to anticipate that he may have to defend a suit regarding that transaction in Utah. *Radcliffe*, 875 P.2d at 612.

The Utah Long-Arm Statute grants personal jurisdiction arising out of claims that involve any business transaction within the state. U.C.A. 78B-3-205. "Such is not limited to nonresidents conducting their own trade or business within the state. Rather, it is sufficient that nonresidents transact business in Utah regardless of whether it is related to the Utah resident's trade or the business of the resident." *Kamdar & Co. v. Laray Co., Inc.*, 815 P.2d 245, 248 (Utah App. 1991). In *Kamdar*, a Utah partnership brought suit against a California-based corporation and

two individual defendants, who are California residents, based upon an arrangement where the Utah partnership would conduct accounting and financial services for the California corporation. For 18 years, the Utah partnership performed all of the corporation's accounting and financial advising tasks. In addition, the partnership conducted similar activities for two individuals associated with the corporation as well. The defendants would send their financial records to the partnership's offices in Utah and the partnership would return various reports, tax returns, statements and other similar documents to the corporation and the individuals. Eventually, one of the individual defendants informed the partnership that its services were no longer needed and the partnership submitted its final billing statement for the business and personal accounting services rendered to the defendants. In response, one of the individual defendants sent a letter back to the partnership disputing the amounts due and the partnership filed suit in Utah. The defendants filed a motion to dismiss for lack of personal jurisdiction, which was granted by the trial court and the partnership appealed claiming that Utah had personal jurisdiction over the defendants.

The *Kumdar* court reiterated the two-part test for personal jurisdiction, which mandates that the claims arise from activities enumerated in the Utah Long-Arm statute and the defendant's contacts must be sufficient to allow jurisdiction to be exercised without violating the defendant's right to due process. *Id.*, 815 P.2d at 248 (citations omitted). The defendants argued that they did not conduct their business in Utah, so the long-arm statute fails to extend personal jurisdiction over them. However,

the court emphasized that the long-arm statute extends to activities arising out of any business transaction within the state. *Id.* The *Kamdar* court reasoned it is sufficient that the out-of-state defendants make a business transaction in Utah rather than actually conducting their own business in that state. *Id.* Therefore, the court held that sending their financial records to Utah so the plaintiff could perform accounting services was sufficient to establish that the claims arose from activities enumerated in the Utah Long-Arm statute. *Id.*

Next, the *Kamdar* court examined whether requiring the defendants to defend themselves in Utah violated the due process clause. The court explained, "In order to satisfy due process requirements, a defendant's contacts with Utah must be 'such that maintenance of a suit does not offend traditional notions of fair play and substantial justice.'" *Id.*, 815 P.2d at 249 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). As such, the defendants must have purposefully availed themselves of the privilege of conducting business there and could have reasonably anticipated being liable for claims in that state. *Id.* (citations omitted). The court also recognized, "We must also balance 'the convenience of the parties and the interests of the state in assuming jurisdiction' by examining 'the relationship of the defendant, the forum, and the litigation, to each other.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Mallory Engineering v. Ted R. Brown & Assoc.*, 618 P.2d 1004, 1008 (Utah 1980)). The *Kamdar* court recognized that the original agreement between the parties

was made in California, but the disputed services were performed in Utah. *Id.* Moreover, the defendant annually sent their financial records to Utah for 18 years, so that the plaintiff could perform their accounting and financial services. *Id.* As a result, the *Kamdar* court determined that the defendants purposefully availed themselves of the privilege of conducting business in Utah and it was constitutionally permissible to require the defendants to defend themselves in Utah. *Id.*

In the case sub judice, the plaintiff obtained a default judgment against defendant Lynch as president of Pure Metals Corporation in the amount of $17,586.43 plus additional costs on December 14, 2011, from the fourth judicial district court of the state of Utah. The plaintiff then filed a praecipe for entry of foreign judgment on December 29, 2011, for the same amount against the defendants in the office of the prothonotary of Lawrence County. The defendants filed a timely petition to strike and/or open foreign judgment on January 9, 2012, contending that the District Court of Utah did not have personal jurisdiction over defendant Lynch and the foreign judgment should be stricken or opened. It appears as though the defendants have asserted a valid defense as their petition to strike and/or open foreign judgment raises various issues of fact regarding the validity of personal jurisdiction in Utah. First, the defendants claim that the plaintiff merely provided hauling services for Pure Metals Corporation and not services for defendant Lynch. Moreover, defendant Lynch never resided in Utah and he does not have any connection with the state of Utah, which includes the lack of business activity in that state. The defendants assert that defendant Lynch was not involved in any of

the transactions or occurrences regarding the underlying claims in this case. The plaintiff also filed suit and obtained the judgment in Utah against defendant Lynch as president of Pure Metals Corporation; however, defendant Lynch was not acting as president as he was the secretary and treasurer of the corporation. In response, the plaintiff contends that defendant Lynch had numerous contacts with the state of Utah, such as telephone conversations and e-mails regarding the underlying contract, and he was the sole incorporator for Pure Metals Corporation.

It is apparent that these pleadings raise a valid defense as to whether the District Court of Utah had personal jurisdiction over defendant Lynch and whether that court had the authority to render a default judgment against defendant Lynch. According to Utah state law and its long-arm statute, it must be established that a foreign defendant had sufficient contacts with or conducted any business activities in the State of Utah. However, in the current matter, there remain issues regarding defendant Lynch's contact with the State of Utah in regard to the underlying contract. The court cannot find sufficient evidence to establish that defendant Lynch had contact with the state of Utah beyond the plaintiff's averments in its answer that defendant Lynch contacted individuals by telephone and e-mail regarding the underlying contract. The plaintiff has attached copies of several e-mail messages to its answer and new matter to petition to strike and/or open new judgment; however, those messages were sent between Matthew Benegasi, an employee of Pure Metals Corporation, and Meg McInnes, who is employed by the plaintiff. None of those e-mails were actually sent by defendant Lynch, but he did receive a copy of several of the e-mail messages.

Moreover, the plaintiff merely avers that defendant Lynch acted in his capacity as an officer of Pure Metals Corporation, but there is no indication that he conducted business on a personal basis in the State of Utah. Thus, it would be improper to confer personal jurisdiction upon the state of Utah to render a personal judgment against defendant Lynch, who did not have sufficient contacts with the state of Utah. This is dissimilar to *Kamdar*, in which the court upheld personal jurisdiction against the individual defendants because they hired the plaintiffs to conduct accounting services for both the corporation and themselves personally. In the current matter, there is no indication that the plaintiff performed any tasks for defendant Lynch personally. The defendants have averred facts that create an issue as to whether the State of Utah had personal jurisdiction in accordance with its long-arm statute, which could provide a valid defense to the foreign default entered in this case. Furthermore, corporations are formed to protect individuals from liability, yet the plaintiff fails to set forth any averments that would permit it to pierce the corporate veil and impose liability upon defendant Lynch. Therefore, the petition to open foreign judgment is granted and the foreign judgment entered in this case is opened.

However, the petition to strike foreign judgment is denied as there is not a fatal defect readily apparent on the face of the record in its current state. The court is not permitted to examine facts beyond the record in determining whether to strike a default judgment. Based purely on the documentation in the record, the court did not discover a fatal defect that would permit the foreign judgment to be stricken as the proper procedure was

followed in obtaining and filing the same in the office of the prothonotary of Lawrence County. Hence, the petition to strike foreign judgment is denied regarding defendant Lynch.

For the reasons set forth in this opinion, the defendants' petition to strike and/or open foreign judgment is granted in part and denied in part. The foreign judgment regarding Pure Metals Corporation is stricken as it was not named on the original judgment entered in the state of Utah. In addition, the foreign judgment regarding Paul Lynch is opened. However, the foreign judgment regarding Paul Lynch is not stricken as there is no fatal defect with the judgment on the face of the record.

## ORDER OF COURT

Now this June 22, 2012, this case being before the court on May 29, 2012, for a hearing and oral argument on the petition to strike and/or open foreign judgment filed by the defendants Pure Metals Corporation and Paul Lynch, president, with both parties appearing, the plaintiff-respondent, McInnes Services, Inc., represented through counsel, Charles Y. Mansell, esquire and the defendants-petitioners Pure Metals Corporation and Paul Lynch, President, represented through counsel, Paul Lynch, esquire and after a hearing and argument held, and consideration of the applicable file, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

1. In accordance with the attached opinion, the petition to strike foreign judgment regarding Pure Metals Corporation is hereby granted.

2. The foreign judgment regarding Pure Metals Corporation is stricken from the record and the prothonotary is directed to strike said foreign judgment from the docket and record.

3. In accordance with the attached opinion, the petition to strike foreign judgment regarding Paul Lynch is hereby denied.

4. In accordance with the attached opinion, the petition to open foreign judgment regarding Paul Lynch is hereby granted.

5. The foreign judgment regarding Paul Lynch is hereby opened and the prothonotary is directed to mark the foreign judgment against Paul Lynch opened in the docket and record.

6. The prothonotary is directed to serve a copy of this order of court upon counsel of record, Charles Y. Mansell, esquire and Paul Lynch, esquire.